IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARLYN WEBB and
PAULINE SANCHEZ,

       Plaintiffs,

v.                             No. CIV 08-0411 MV/LAM

MICHAEL PADILLA, et al.,

       Defendants.

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' SECOND MOTION TO COMPEL (*Doc. 89*)

**THIS MATTER** is before the Court on Plaintiffs' second motion to compel contained in their ***Motion and Memorandum in Support of Plaintiffs' Second Motion to Compel*** (hereinafter "***Second Motion to Compel***") (*Doc. 89*), filed on February 12, 2009. The Court has considered the motion, the response to the motion by Defendants Michael Padilla, Raymond Schultz, Martin Chavez and City of Albuquerque (hereinafter, "Defendants") (*Doc. 99*), Plaintiffs' reply in support of the motion (*Doc. 118*), the record of this case and relevant law, and **FINDS** that the motion should be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

At issue in this motion are the City's objections and responses to Plaintiff s' *Second Set of Interrogatories and Second Request[s] for Production of Documents*. In their motion, Plaintiffs ask the Court to order the City to fully respond to two of Plaintiffs' interrogatories and three of Plaintiffs' requests for production. *See **Second Motion to Compel** (Doc. 89)* at 1-9. Also at issue is Defendant Schultz' refusal to answer questions at his deposition regarding an incident that gave rise to the case of *Virginia Regensberg, et al. v. City of Albuquerque, et al.*

(hereinafter, "*Regensberg* case"), Case No. D-202-CV-2007-01342, filed in New Mexico's Second Judicial District Court against the City, Schultz and other City employees. *Id.* at 8-9. Plaintiffs ask the Court to order Schultz to answer questions about the *Regensberg* incident at his deposition. *Id.* In addition to the foregoing, Plaintiffs ask the Court to reconsider its previous decision in this case that information regarding sexual harassment complaints or charges against Mr. Padilla unrelated to his employment by, or work as a consultant for, the City was not discoverable. *Id.* at 4-6; *see also* **Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel and for Sanctions** (*Doc. 53*) at 4-7.

This case arises out of Plaintiffs' employment with the City. In their complaint, Plaintiffs have asserted claims against the City for violation of Title VII of the Civil Rights Act of 1964, as amended (disparate treatment, hostile work environment and retaliation); violation of the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1, *et seq.*; municipal liability; and breach of implied employment contract. *See* **Complaint** (hereinafter, "**Complaint**") (*Doc. 1*) at 13-17, 20-22. Plaintiffs have asserted claims against Defendant Padilla under 42 U.S.C. §§ 1981 and 1983 (denial of Fourteenth Amendment right to equal protection). *Id.* at 17.[1] Plaintiffs have asserted claims against Defendants Chavez and Schultz for violation of 42 U.S.C. § 1983 (supervisory liability and violation of procedural due process). *Id.* at 18-20. As relief against all Defendants, Plaintiffs seek compensatory and punitive damages, reasonable attorneys' fees and costs, pre- and post-judgment interest, and such other relief as the Court deems appropriate. *Id.* at 22.

---

[1]Plaintiffs also appear to assert a gender discrimination claim against Padilla pursuant to Title VII, as amended. *See* **Complaint** (*Doc. 1*) at ¶ 124.

In their complaint, Plaintiffs allege that Defendant Padilla was the manager of the City's 311 call center prior to November of 2006, and the City's Director of Communications from approximately November of 2006 through April of 2007.  *See* ***Complaint*** (*Doc. 1*) at ¶ 15.  Padilla denies these allegations.  *See* ***Defendant Michael Padilla's Amended Answer to Complaint for Employment Discrimination and Retaliation and Breach of Contract*** (*Doc. 10*) at ¶ 15.  Padilla has denied most of the remaining allegations in Plaintiff's complaint and asserted the following affirmative defenses: failure to mitigate damages; legitimate, non-discriminatory and non-retaliatory business reasons for Padilla's actions; Padilla acted in good faith and in a reasonable manner given the information and circumstances existing at the time; failure to exhaust administrative remedies; and Plaintiffs' claims are barred to the extent that their requested relief exceeds, or is inconsistent with, the relief available under applicable law including, but not limited to, the types of, and caps on, damages and relief available under Title VII.  *See id.* at 19-20.

Defendants Schultz, Chavez and the City have denied most of the allegations in Plaintiffs' complaint and asserted the following affirmative defenses: applicable statutes of limitation; failure to exhaust administrative remedies; failure to state a claim upon which relief can be granted; as to Plaintiffs' claims under the New Mexico Human Rights Act and Title VII, their conduct was supported by legitimate business reasons; as to Defendant Padilla, to the extent it is proved that he engaged in unlawful conduct, that he was not acting within the course and scope of his employment or the scope of his duties; Plaintiffs' claims are barred by negligence or other wrongful conduct by Plaintiffs or other persons or entities; as to Plaintiffs' federal claims against the City and Defendants Schultz and Chavez (the latter acting in their official capacities), lack of proof that Plaintiffs' alleged injuries were caused by a policy or custom of the City; as to Plaintiffs' state law claims, the claims are  barred by the New Mexico Tort Claims Act; as to Plaintiffs' federal claims

against Defendants Schultz and Chavez, the claims are barred by qualified immunity; and as to Plaintiffs' Title VII claims, failure to establish supervisory liability under Title VII.  *See **Answer of Defendants Schultz, Chavez and City to Plaintiffs' Complaint** (Doc. 12)* at 10-11.

The Court will address the disputed discovery requests in numerical order and, thereafter, the deposition testimony of Defendant Schultz and the discovery of prior sexual harassment complaints or charges against Defendant Padilla.

### *Plaintiffs' Interrogatory No. 17:*

Interrogatory No. 17 asks the City to "describe with specificity the nature of the complaint or complaints made against Michael Padilla in February, 2007 to the City EEO, or any other time during Defendant Padilla's employment with the City, and identify the specific City or state regulations or policies that were implicated in the investigation or that Defendant Padilla was found to have violated."  *Doc. 89-2* at 2.  The City objected to this interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; seeks personal and confidential information; and seeks information that is the subject of a pending motion to compel filed by Plaintiffs and a pending motion for protective order filed by the City.  *Id.*

Plaintiffs argue that the City's objections should be overruled because the information sought in this interrogatory is relevant to the City's knowledge of Mr. Padilla's alleged misconduct, the scope of the City's investigation of his misconduct, the appropriateness of the City's response to his misconduct, and the appropriateness of any disciplinary action taken by the City against Mr. Padilla. *See **Second  Motion to Compel** (Doc. 89)* at 6.  In addition, Plaintiffs argue that this interrogatory seeks information relevant to the work environment created by Mr. Padilla in Plaintiffs' department and to the discipline imposed by the City as a result of Mr. Padilla's conduct in that department and

another City department. *Id.* Defendants argue that the information sought by this interrogatory is irrelevant and not discoverable. *See **Defendants' Response to Plaintiffs' Second Motion to Compel** (Doc. 99)* (hereinafter, "***Defendants' Response***") at 5-6.

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Broader discovery, going to "any matter relevant to the subject matter involved in the action[,]" requires a court order and a showing of good cause. *Id.* When the discovery sought appears relevant, it is non-movant's burden to show why discovery is objectionable. *See, e.g., Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (citations omitted).

Within certain parameters, the Court finds this interrogatory seeks information relevant to Plaintiffs' claims.  Therefore, the Court will order the City to fully answer this interrogatory subject to limitations directed at obtaining relevant information.  The City will be ordered to fully answer this interrogatory insofar as it relates to any complaints made against Mr. Padilla to the City's Equal Employment Office at any time during his employment with the City (i) alleging any sexual misconduct, sexual harassment, gender discrimination or retaliation, or (ii) that were complaints made by Plaintiffs or other employees in their department.  Absent these limitations, Plaintiffs have not shown that this interrogatory seeks information relevant to the claims or defenses in this lawsuit.

### *Plaintiffs' Interrogatory No. 18:*

Interrogatory No. 18 asks the City to "describe with specificity the steps the City took to address the report of misconduct by Michael Padilla to the City EEO on or about February 1, 2007 or to remedy future conduct by Defendant Padilla." *Doc. 89-2* at 2.  The City objected to this interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; seeks personal and confidential information; and

seeks information that is the subject of a pending motion to compel filed by Plaintiffs and a pending motion for protective order filed by the City.  *Id.*

Plaintiffs argue that the City's objections should be overruled because the information sought in this interrogatory is relevant to the City's knowledge of Mr. Padilla's alleged misconduct, the scope of the City's investigation of his misconduct, the appropriateness of the City's response to his misconduct, and the appropriateness of any disciplinary action taken by the City against Mr. Padilla. *See **Second Motion to Compel** (Doc. 89)* at 7.

Like the previous interrogatory, the Court will order the City to fully answer this interrogatory subject to limitations directed at obtaining relevant information.  As to other matters, Plaintiffs have not demonstrated that this interrogatory seeks information relevant to the claims or defenses of the parties.  The Court will, therefore, order the City to fully answer this interrogatory insofar as it relates to (i) any allegations of sexual misconduct, sexual harassment, gender discrimination or retaliation, or (ii) complaints made by Plaintiffs or other employees in their department.

### ***Plaintiffs' Request for Production No. 22:***

Request for Production No. 22 asks the City to "provide a copy of all documents, memoranda, reports, or any other written communication or thing referenced or related in any way to the monitoring and supervision of Michael Padilla while working at Communications or to your answer to Interrogatory No. 11." *Doc. 89-2* at 3.  In response to this request for production, the City stated that "[a]ll responsive documents have previously been produced."  *Id.*

Plaintiffs argue that voluminous documents have been produced in this case and the City's response to this request is insufficient to allow Plaintiffs to locate and identify which documents are responsive to this request.  *See **Second Motion to Compel** (Doc. 89)* at 7.  The Court agrees.  A

party responding to a request for production must either "produce documents as they are kept in the usual course of business" or "organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i); *see also American Intern. Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 410 (N.D. Ill. 2007).   Simply stating that all responsive documents have been produced, without demonstrating that the responsive documents were produced as they are kept in the usual course of business or organizing and labeling to correspond to the request, fails to meet this standard.   Moreover, the City has not demonstrated that it produced all documents responsive to this request as they are kept in the usual course of business.   Therefore, the Court will order the City to supplement its response to this request for production by identifying, with specificity, all documents responsive to this request that it has produced to Plaintiffs.   If applicable, this identification should be done by using the Bates numbers stamped on the documents.

### *Plaintiffs' Request for Production No. 24*:

Request for Production No. 24 asks the City to "provide all documents and communication related to the Employee Equity Office of the City of Albuquerque's investigations of Michael Padilla, including, but not limited to, all statements of Michael Padilla, whether written or recorded, and all correspondence/communication by Angela Baldwin or any other EEO representative regarding Michael Padilla, Plaintiffs, Michelle Lopez or Claudia Ponce." *Doc. 89-2* at 3.   The City objected to this request for production on the grounds that it seeks documents regarding complaints of Claudia Ponce and any investigations of Mr. Padilla unrelated to sexual harassment or complaints by Plaintiffs and Michelle Lopez. *Id.*   Additionally, the City objected that this request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; seeks personal and confidential information; and seeks information that is the subject of a pending motion to compel filed by Plaintiffs and a pending motion for protective

7

order filed by the City. *Id.* In further response to this request for production, the City stated that "[t]o the extent this Request seeks documents relating to investigations of complaints by Plaintiffs or Michelle Lopez, all responsive documents have previously been produced." *Id.* at 3-4.

In regard to this request for production, Plaintiffs argue that all statements made by Mr. Padilla are relevant to his defenses in this case and all admissions or statements by Mr. Padilla are discoverable. Additionally, Plaintiffs appear to argue that all communication by the City's Equal Employment Office related to Mr. Padilla, Plaintiffs, Michelle Lopez or Claudia Ponce is relevant to Plaintiffs' claims and the City's internal response to Plaintiffs' claims. *See Second Motion to Compel* (*Doc. 89*) at 7. In their response to Plaintiffs' motion, Defendants reassert the arguments in their objections. *See Defendants' Response* (*Doc. 99*) at 7.

Subject to parameters similar to those outlined above, the Court finds this request for production seeks materials relevant to Plaintiffs' claims which should be produced. Moreover, Defendants have not provided the Court with any legal support for their objection to this request on the ground that it seeks personal and confidential information. Therefore, the Court will order the City to respond to this request for production insofar as it relates to documents or communications regarding investigations by the City's Equal Employment Office of Mr. Padilla (i) involving any allegations of sexual misconduct, sexual harassment, gender discrimination or retaliation, or (ii) allegations made by Plaintiffs or other employees in their department. Absent these limitations, Plaintiffs have not shown that this request for production seeks information relevant to the claims or defenses in this lawsuit.

### *Request for Production No. 25:*

Request for Production No. 25 asks the City to "provide a copy of all documents, memoranda, reports, notes, correspondence, emails, documents, or any other written communication

between Michael Padilla and Defendant Chavez from July, 2006 through present.  *Doc. 89-2* at 4.

In response to this request for production, the City stated that "[a]ll responsive documents have

previously been produced."  *Id.*

      Plaintiffs argue that the City's response to this request is insufficient to allow them to locate

and identify the documents responsive to this request, given the voluminous document production

in this case.  *See **Second Motion to Compel*** (*Doc. 89*) at 8.  The Court agrees, for the same reasons

stated above regarding Request for Production No. 22, and will order the City to supplement its

response to this request for production by identifying, with specificity, all documents responsive to

this request that it has produced to Plaintiffs.  If applicable, this identification should be done by

using the Bates numbers stamped on the documents.

      ***Deposition of Raymond Schultz:***

      Plaintiffs' counsel took the deposition of Defendant Raymond Schultz on January 23, 2009.

*See Doc. 89-4* at 1.  Schultz is the Chief of Police for the City of Albuquerque.  During the

deposition, Plaintiff's attorney, Louren Oliveros, questioned Chief Schultz about an affidavit he

provided in this case regarding "several dangerous incidents" involving the City's communications

center.  *See Doc. 89-4* at 2-3.  During the following exchange at the deposition, Chief Schultz, on

the advice of counsel, refused to answer questions about the incident involving a murder-suicide

which gave rise to the *Regensberg* case:

>     Q.    [Ms. Oliveros] Starting with paragraph three[,] you
> state that in '06 there were several dangerous incidents which arose
> from poor response times at the center, as well as operational
> problems.  Were there - - were these, or I'm sorry strike that.
>
>     What were the incidents that you are referring to here?
>
>     A.    [Chief Schultz] Well, unfortunately, it's one of those
> things that happened on a pretty regular basis where we get

complaints of people that called 242 cops or 911, and either there was a very large number of rings with no pick up, going to the point where people would get frustrated, hang up, call back, and would compound the problem.

Also had an incident involving a call that was held for a long time[,] information wasn't being properly relayed from 911 to dispatch, and it resulted in a, resulted eventually in a murder[-]suicide situation, but the way the call was handled was a part of the problem with that particular incident, I believe it's called the Regansburg [sic] case.

Q.     The Regansburg [sic] case.  Is it your contention that the city and the communications center was at fault for that poor response time?

MR. ALLEN.  Objection.

MS. LEVY: Objection, calls for a legal conclusion.

MR. ALLEN: I join.

MS. LEVY: I am going to interject because we actually have a pending lawsuit on this matter and I believe that the chief is a named party in that so I am going to instruct him not to answer.

MR. ALLEN: Yes, I would also add, I think it probably calls for privileged information because I think implicitly it's asking the chief to offer information that has been discussed with his attorneys about that particular incident.  I don't think it's reasonably calculated either.

MS. LEVY: My position is if you are going to pursue it, we can certify it since we will be coming back anyway, we can discuss it then.  I am instructing him not to answer the question.

MS. OLIVEROS: Let me certify the question so we can come back to it.

Q.(By Ms. Oliveros) Was this incident part of the basis for your transfer of Ms. Webb and Ms. Sanchez?

A.     That incident specifically, no.   It was the accumulation of everything that had been going on.

10

Q.      Well, when you say that incident specifically - - and you guys have to  interject if I am treading on something that you think is privileged, we will have to come back to that - - when you say specifically I need to know if it came into play in your determination to transfer Ms. Webb and Ms. Sanchez?

MS. LEVY: I will make a continuing objection and instruct him not to answer based on the fact that it's pending litigation and it would be attorney-client issues, so I am instructing him not to answer.

MS. OLIVEROS: You are instructing him not to answer?

MS. WELLS: What I am confused about is I thought he testified several times that he is not the one that made that decision, that is why I don't understand why we are even asking him now.

Q.      (By Ms. Oliveros) Well, at the time Ms. Webb and Ms. Sanchez were in [C]ommunications, they were in your chain of command, correct?

A.      Yes.

Q.      And the decision to transfer them was agreed upon by you when you carried out that order, correct?

MS. LEVY: Objection, misstates his prior testimony.

MR. ALLEN: Objection.

Q.  (By Ms. Oliveros) Go ahead and answer?

A.      As I said, the previous decision to make the transfer was that of Dr. Perlman, and based on his decision they were moved.

Q.  Did you agree with that decision?

A.  Yes.

*Id.*

Plaintiffs ask the Court to order Chief Schultz to answer all questions at his deposition related to his knowledge of the *Regensberg* case and whether, and to what extent, the incident

11

involved in that case had any role in Plaintiffs' transfer from the City's communication department. *See Second Motion to Compel* (*Doc. 89*) at 9. Plaintiffs contend that questions about the *Regensberg* case are relevant to the City's defense that Plaintiffs were transferred from the communications department for their poor management of that department and relevant to Plaintiffs' claim that the City's reasons for their transfer were pretextual. *Id.* at 8-9. Defendants argue that Plaintiffs should not be allowed to question Chief Schultz about the *Regensberger* lawsuit because the City does not blame Plaintiffs for the incident that led to the lawsuit and because Plaintiffs sought to elicit information from Schultz that is protected by the attorney-client privilege. *See Defendants' Response* (*Doc. 99*) at 8-11.

Plaintiffs allege in their complaint that they were transferred without cause from the City's communications department in retaliation for filing a discrimination claim against Defendant Padilla. *See Complaint* (*Doc. 1*) at 15-16. In one of its discovery responses, the City has asserted that Plaintiffs were transferred from the communications department, in part, "because it was determined that many of the historic and ongoing problems in Communications were the result of poor management." *Doc. 89-5* at 4. In the same discovery response, the City asserts that "[t]he decision to transfer Plaintiffs was made by Bruce Perlman in consultation with Ray Schultz." *Id.*

In his deposition testimony quoted above, Chief Schultz gave the *Regensberg* incident as an example of dangerous incidents that occurred at the communications department. The City's reasons for transferring Plaintiffs from the communications department are directly at issue in this case and the Court finds that Plaintiffs are entitled to question Chief Schultz at his deposition regarding what role, if any, the *Regensberg* incident played in Plaintiffs' transfers. Notwithstanding this determination, however, Plaintiffs may not question Chief Schultz as to any communications related to the *Regensberg* case that are protected from disclosure by the attorney-client privilege,

12

or any matters involving the *Regensberg* case that are unrelated to the City's reasons for transferring Plaintiffs from the communications department.

### Discovery Regarding Any Prior Sexual Harassment
### Complaints or Charges Against Defendant Padilla:

Previously in this case, the Court ruled that information regarding sexual harassment complaints or charges against Mr. Padilla unrelated to his employment by, or work as a consultant for, the City was beyond the permitted scope of discovery and not discoverable. *See* ***Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel and for Sanctions*** (*Doc. 53*) at 5. In their motion, Plaintiffs ask the Court to reconsider this decision and allow Plaintiffs to obtain discovery, including questions to Mr. Padilla at his deposition, regarding any prior charges of sexual harassment against Mr. Padilla made to employers other than the City. *See* ***Second Motion to Compel*** (*Doc. 89*) at 4-6. Plaintiffs argue that such information is relevant to impeaching Mr. Padilla regarding a statement he made during his deposition. *Id.* This was Mr. Padilla's statement, made in apparent reference to Plaintiffs' complaints against him at the City, that "I won't allow this one blemish on my career to stop my growth." *Doc. 89-3* at 10. In addition, Plaintiffs appear to argue that such information is relevant to the City's investigation and knowledge of Mr. Padilla before placing him in a position in the Communications department and, possibly, to refute Mr. Padilla's stated reasons for leaving his previous employment. *See* ***Second Motion to Compel*** (*Doc. 89*) at 5-6.

Since the Court's previous ruling, referenced above, Plaintiffs have produced excerpts from a background investigation report of Mr. Padilla prepared for the City by

13

Robert Caswell Investigations,[2] which shows that there were allegations of workplace sexual harassment involving Mr. Padilla at places he worked before he was employed by the City and that City employees, at some point, had knowledge of these allegations.  Evidence of prior acts of sexual harassment can be relevant to show discriminatory intent or motivation.  *See Wilson v. Muckala*, 303 F.3d 1207, 1217 (10th Cir. 2002); *Rael v. Marquez*, No. CIV 97-1096 JC/WWD (D.N.M. Oct. 20, 1998), *Memorandum Opinion and Order* (*Doc. 81*) at 7 (unpublished) (citing *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995)).[3]  Such evidence can also be relevant to show that a municipality had a custom or policy of tolerating sexual harassment or that it was deliberately indifferent in failing to conduct a reasonable background investigation of an employee in claims under 42 U.S.C. § 1983.  *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307-12, 1313-15 (11th Cir. 2001).[4]  Therefore, the Court will allow Plaintiffs to conduct discovery in this case, and depose Mr. Padilla, regarding (i) any allegations or claims of sexual harassment made against him in connection with his employment before he worked at the City, and (ii) Defendants' knowledge of such allegations or claims.  In allowing this discovery, the Court makes no ruling, and expresses no opinion, regarding the admissibility of such evidence at trial.

---

[2]*See **Plaintiff's Motion to Modify the Court's Order Terminating Discovery and to Re-Open Discovery and Memorandum in Support Thereof and Request for Sanctions Against the City of Albuquerque** (*Doc. 103*), Exhibit H (*Doc. 105-2*).

[3]However, alleged prior incidents of sexual harassment that occurred in places outside the City of Albuquerque workplace are not relevant to establish Plaintiffs' hostile work environment claim related to work at the City.  *See Wilson v. Muckala*, 303 F.3d at 1217 (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987)).

[4]Plaintiffs allege that the City failed to conduct a proper background check on Mr. Padilla before hiring him.  *See **Complaint** (*Doc. 1*) at ¶ 26.

**_Deposition of Michael Padilla:_**

Plaintiffs' counsel took the deposition of Defendant Padilla on January 19, 2009.  *See Doc. 89-3* at 1.  During the deposition, Mr. Padilla, acting on the advice of counsel, refused to answer questions about his relationship with Claudia Ponce and allegations made by Ponce related to the City's 311 call center that were investigated by the City.  *Id.* at 7-8.  Plaintiffs ask the Court to order Mr. Padilla to answer questions at his deposition regarding his relationship with Ponce and her allegations against Mr. Padilla related to the City's 311 call center.  *See **Second Motion to Compel*** (*Doc. 89*) at 2, 8-9.  Plaintiffs contend that Padilla was suspended as a consequence of the City's investigation of Ms. Ponce's allegations and its investigation of claims made by employees in the communications department.  *Id.* at 3.  Plaintiffs argue that discovery regarding Ms. Ponce is relevant to Plaintiffs' claims that the City failed to properly supervise Padilla and to whether the City knew or should have known that Padilla would be a risk to women at the Communications department.  *Id.*[5]

Consistent with its other rulings in this Order, the Court will grant Plaintiffs' motion subject to limitations directed at obtaining relevant information.  Plaintiffs may question Mr. Padilla at his deposition regarding (i) any allegations made by Ms. Ponce against Mr. Padilla alleging sexual misconduct, sexual harassment, gender discrimination or retaliation by Mr. Padilla while he was employed by the City, and (ii) the City's investigation of such allegations.  Absent these limitations,

---

[5]There appears to be a factual dispute as to whether Ms. Ponce was a City employee.  In the reply in support of their motion, Plaintiffs state that "Ms. Ponce was a City employee when she made her complaint against Defendant Padilla[.]" ***Reply to Defendants' Joint Response to Plaintiffs' Second Motion to Compel*** (*Doc. 118*) at 3.  However, an investigative report prepared by the City dated February 12, 2007, regarding claims by Ms. Ponce against Mr. Padilla related to the 311 Call Center that Plaintiffs filed in this case states that Ms. Ponce was not a City employee.  *See **Response to Motion for Protective Order [Doc. 78]*** (*Doc. 83*), Exhibit A (*Doc. 83-2*) at 1.

15

Plaintiffs have not shown that the information they seek is relevant to the claims or defenses in this lawsuit.

**IT IS THEREFORE ORDERED** that Plaintiffs' second motion to compel contained in their ***Motion and Memorandum in Support of Plaintiffs' Second Motion to Compel*** (*Doc. 89*) is **GRANTED IN PART** and Defendant City of Albuquerque is ordered to:

1.      Fully answer Interrogatory No. 17 of Plaintiffs' *Second Set of Interrogatories and Second Request[s] for Production of Documents* insofar as it relates to any complaints made against Defendant Michael Padilla to the City's Equal Employment Office at any time during his employment with the City (i) alleging any sexual misconduct, sexual harassment, gender discrimination or retaliation, or (ii) that were complaints made by Plaintiffs or other employees in their department;

2.      Fully answer Interrogatory No. 18 of Plaintiffs' *Second Set of Interrogatories and Second Request[s] for Production of Documents* insofar as it relates to (i) any allegations of sexual misconduct, sexual harassment, gender discrimination or retaliation, or (ii) complaints made by Plaintiffs or other employees in their department;

3.      Supplement its response to Request for Production No. 22 of Plaintiffs' *Second Set of Interrogatories and Second Request[s] for Production of Documents* by identifying, with specificity, all documents responsive to this request that it has produced to Plaintiffs, and by using, if applicable, the Bates numbers stamped on the documents;

4.      Respond to Request for Production No. 24 of Plaintiffs' *Second Set of Interrogatories and Second Request[s] for Production of Documents* insofar as it relates to documents or communications regarding investigations by the City's Equal Employment Office of Mr. Padilla

16

(i) involving any allegations of sexual misconduct, sexual harassment, gender discrimination or retaliation, or (ii) allegations made by Plaintiffs or other employees in their department; and

5.      Supplement its response to Request for Production No. 25 of Plaintiffs' *Second Set of Interrogatories and Second Request[s] for Production of Documents* by identifying, with specificity, all documents responsive to this request that it has produced to Plaintiffs, and by using, if applicable, the Bates numbers stamped on the documents.

**IT IS FURTHER ORDERED** that:

1.      Plaintiffs may question Chief Schultz at his deposition regarding what role, if any, the *Regensberg* incident played in Plaintiffs' transfers from the City's communications department but may not question Schultz as to (i) any communications related to the *Regensberg* case that are protected from disclosure by the attorney-client privilege, or (ii) any matters involving the *Regensberg* case that are unrelated to the City's reasons for transferring Plaintiffs from the communications department; and

2.      Plaintiffs may question Mr. Padilla at his deposition regarding (i) any allegations or claims of sexual harassment made against him in connection with his employment before he worked at the City, (ii) Defendants' knowledge of such allegations or claims, (iii) any allegations made by Claudia Ponce against Mr. Padilla alleging sexual misconduct, sexual harassment, gender discrimination or retaliation by Mr. Padilla while he was employed by the City, and (iv) the City's investigation of such allegations by Ms. Ponce.

**IT IS FURTHER ORDERED** that as to all other matters, Plaintiffs' motion is **DENIED**.

**IT IS FURTHER ORDERED** that each party shall bear its own attorneys and costs association with Plaintiffs' motion.

17

**IT IS SO ORDERED**.

_Lourdes a. Martínez_
**LOURDES A. MARTÍNEZ**
**UNITED   STATES   MAGISTRATE   JUDGE**