# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

MARLYN WEBB and
PAULINE SANCHEZ,

   Plaintiffs,

vs.           Civ. No. 08-411 MV/LAM

MICHAEL PADILLA, *et al.*,

   Defendants.


## <u>MEMORANDUM OPINION AND ORDER</u>

  **THIS MATTER** comes before the Court on Defendants' Motion in Limine to Preclude

the Admission of Evidence Regarding Calculable Damages, filed August 26, 2009 **[Doc.**

**No. 172]**, Defendants' Motion in Limine to Exclude Evidence of Other Supposed Allegations

Against Michael Padilla, filed August 26, 2009 **[Doc. No. 173]**, and Plaintiffs' Consolidated

Motions in Limine, filed September 21, 2009 **[Doc. No. 188]**.  The Court, having considered the

motions, briefs, relevant law and being otherwise fully informed, finds that the parties' motions

in limine are in part well-taken and in part not well-taken, and accordingly the motions will be

**GRANTED in part** and **DENIED in part**, as set forth below.

## <u>FACTUAL BACKGROUND</u>

  This case arises out of alleged employment discrimination against Plaintiffs Marlyn

Webb and Pauline Sanchez.  Prior to mid-April 2007, Ms. Webb and Ms. Sanchez worked as

Assistant Communications Manager and Communications Manager, respectively, of the City of

Albuquerque's 911 Communications Center ("Communications").  Communications had

historically suffered from numerous problems that resulted in some high-profile incidents.  In

2006, the City of Albuquerque ("the City") tasked Michael Padilla, then general manager/director of the City's 311 Call Center, with evaluating and devising a plan to address the perceived problems at Communications.  Mr. Padilla developed a plan, which he began implementing at Communications in January 2007.  While Mr. Padilla was at Communications, Plaintiffs contend that he harassed them on the basis of their sex and created a hostile work environment.

On March 7, 2007, Plaintiffs (along with eight other female supervisors) filed a complaint with the City's Employment Equity Office and after conducting an investigation, the EEO found that Mr. Padilla had engaged in certain inappropriate conduct and recommended that he be disciplined.  Mr. Padilla, however, resigned before discipline could be imposed.

On April 9, 2007, Plaintiffs were transferred out of Communications (though they continued to receive the same pay and benefits).  Plaintiffs allege that their transfers were in retaliation for bringing the EEO complaint, while the City contends that Plaintiffs were transferred because it was determined that many of the historic and ongoing problems at Communications were the result of poor management, because Plaintiffs were resistant to changes to improve Communications, and because Plaintiffs' continued presence in Communications created fear among some employees and contributed to low employee morale. As a result of their transfers, Plaintiffs allege that they were isolated with no staff, no subordinates, and often very few job duties.

In the instant suit, Plaintiffs allege that the City is liable for the hostile work environment created by Mr. Padilla, for transferring them in retaliation for their filing of the EEO complaint, and for breaching an implied employment contract between Plaintiffs and the City.

2

## DISCUSSION

I.      **The City's Motion in Limine to Preclude the Admission of Evidence Regarding Calculable Damages**

In its first motion in limine **[Doc. No. 172]**, the City[1] seeks an order prohibiting Plaintiffs from introducing evidence regarding calculable damages (*i.e.*, lost income) at trial based on Plaintiffs' failure to comply with Federal Rules of Civil Procedure 26, 33 and 34.  In their complaint, Plaintiffs allege that their damages include *inter alia* demotion, loss of job responsibilities, ostracization, loss of prestige and reputation, lost earning capacity, lost pay and benefits, loss of promotion opportunities, and emotional and psychological harm, anxiety and distress **[Doc. No. 1 at ¶¶ 102, 109, 113, 144, 151]**.  The City, however, argues that Plaintiffs' initial disclosures and interrogatory responses failed to provide a damage calculation and that Plaintiffs never produced documents that would provide proof of the amount of such damages. The City therefore requests that "the Court enter an Order prohibiting Plaintiffs from introducing any evidence . . . to establish that they are entitled to a sum certain of damages" **[Doc. No. 172 at 6]**.

In their initial disclosures, Plaintiffs did not provide a computation of the damages they are seeking but instead stated that "[f]or all civil rights violations and state torts, psychological and emotional distress, Plaintiff[s] seek[ ] compensatory damages in an amount to be determined

---

[1]  While the Defendants' motions in limine were originally brought by the City, as well as defendants Martin Chavez and Raymond Schultz, Martin Chavez and Raymond Schultz were granted summary judgment as to the claims against them **[Doc. No. 199]**.  Accordingly, the City is the only remaining defendant.

by the finder of fact" and that they are seeking "[p]unitive damages in an amount to be determined by the finder of fact" **[Doc. No. 172, Ex. A]**.  In response to an interrogatory requesting that Plaintiffs "[i]dentify all damages [they] suffered as a result of the alleged conduct which gives rise to [their] Complaint herein," the Plaintiffs each responded by providing a list of the alleged damages she suffered, as well as paragraphs describing the emotional suffering and physical symptoms she endured as a result of Mr. Padilla's conduct and describing how her removal from Communications caused her to lose professional contacts.  The first item on Ms. Webb's list of damages is "[l]oss of opportunity for a manager's position in Communications," while the first item on Ms. Sanchez's list is "[l]oss of opportunity to be rehired by the City."  Additionally, both Plaintiffs state in their responses that they "did not receive a raise when funding was reallocated for Communications" **[Doc. No. 172, Ex. B]**.

In response to the motion in limine, Plaintiffs argue that the "difficulty in evaluating their damages" stems from "the bizarre situation that they found themselves in after their removal and demotion from Communications" **[Doc. No. 183 at 2]**.  Plaintiffs contend, however, that there is deposition testimony (1) that following Ms. Sanchez's retirement, Ms. Webb had intended to apply for the position of Communications Manager and thus lost the additional income she would have received had she obtained that promotion; (2) that neither Ms. Webb nor Ms. Sanchez received raises in 2007, though Communications employees received substantial raises; and (3) that the employees who replaced Plaintiffs in Communications after their transfers were paid considerably more than Plaintiffs.

In its reply brief, the City responds by arguing that these damage theories are speculative, as Ms. Webb admits that she was never promised a promotion to Communications Manager;

there is no evidence that Ms. Webb's job duties were comparable to those of the current

Communications employee to whom she compares her salary; and there is no evidence that

Ms. Sanchez's qualifications are comparable to the current Communications director to whom

she compares her salary.

This Court finds that Plaintiffs' initial disclosures fail to comply with Federal Rule of

Civil Procedure 26(a)(1)(A)(iii) as the initial disclosures do not provide "a computation of each

category of damages claimed by the disclosing party."[2]  Pursuant to Rule 37(c)(1), "[i]f a party

fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

trial, unless the failure was substantially justified or is harmless."  In determining whether a

failure to provide information or to identify a witness is substantially justified or harmless, courts

should consider:  "'(1) the prejudice or surprise to the party against whom the testimony is

offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such

testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.'" *Jacobsen*

*v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc. v.*

*Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

Balancing these considerations, this Court finds that the City's motion in limine should

be denied.  In reaching this conclusion, the Court notes that Plaintiffs articulated their lost

income damages theories in their interrogatory responses (these are not newly articulated

theories, nor should they surprise the City), there is relevant deposition testimony on these

---

[2]  This Court does not find that Plaintiffs' interrogatory responses were lacking, nor has
the City presented sufficient evidence to establish that Plaintiffs' document production was
inadequate.

5

theories, and the information needed to support or rebut these theories is information that the City would likely possess.  For example, the City should know whether or not Ms. Webb would be a likely candidate for promotion, whether the Plaintiffs would have likely received raises but for their transfers, and the relative qualifications and job duties of the Plaintiffs versus the present Communications employees to whom they attempt to compare their salaries.  Likewise, it does not appear that the City ever moved to compel Plaintiffs to provide a more definite statement of their alleged damages, nor does the City point to documents relevant to Plaintiffs' lost income theory that have not been produced.  Accordingly, this Court finds that Plaintiffs' failure to provide a computation of each category of damages is, in this instance, harmless.[3]

II.     **Defendant's Motion in Limine to Exclude Evidence of Other Supposed Allegations Against Michael Padilla**

In its second motion in limine **[Doc. No. 173]**, the City seeks to exclude evidence of other allegations of workplace misconduct by Mr. Padilla.  Specifically, the City seeks to exclude (1) any testimony or other evidence regarding alleged sexual harassment of employees at Mr. Padilla's prior places of employment (including the testimony of Claudia Rodrguez Guzman, Monica Rios, and Claudia Ponce Duran regarding Mr. Padilla's conduct while employed at GE); (2) any testimony or other evidence regarding alleged improprieties by Mr. Padilla while employed at the City's 311 Call Center; and (3) the report and testimony of

---

[3]  In its reply brief, the City also faults Plaintiffs for their failure to provide information regarding the cost of treatment for emotional and physical symptoms that they allegedly suffered as a result of Mr. Padilla's conduct, as well as Plaintiffs' failure to provide a "calculation of their alleged 'soft' damages, like emotional distress" **[Doc. No. 191 at 3]**.  As the City's moving papers focused on lost income, the Court will not addresses these categories of damages, as they have not been fully briefed by the parties.

Robert Casey, who the City employed to conduct a background investigation on Mr. Padilla. While the City's motion in limine also seeks to exclude any testimony or evidence regarding the employment discrimination/wrongful termination claim brought against MCI by Santiago Curchitzer during the time Mr. Padilla was employed at MCI's call center, Plaintiffs do not object to the exclusion of this evidence, so the Court need not address it further.

This Court finds that the City's motion in limine to exclude evidence of other supposed allegations against Mr. Padilla should be granted in part and denied in part as follows.

**A.**      **Evidence of Alleged Sexual Harassment by Mr. Padilla Prior to His Employment by the City**

Pursuant to Federal Rule of Evidence 403, this Court will exclude testimony or evidence regarding alleged sexual harassment by Mr. Padilla prior to his employment by the City ***unless*** Plaintiffs can show that the City knew of the alleged wrongdoing prior to the time Mr. Padilla was removed from Communications pending investigation of the EEO complaint brought by Plaintiffs.  In making the determination that this evidence should be excluded, this Court first finds that there is some risk that jurors will impermissibly infer that Mr. Padilla engaged in discrimination against Plaintiffs based on his alleged prior acts of inappropriate behavior—a use of the evidence that is prohibited by Federal Rule of Evidence 404(b) and is prejudicial to Defendant.

Second, it appears that much of the evidence regarding alleged sexual harassment by Mr. Padilla prior to his employment by the City is of minimal relevance as the City (the only remaining Defendant in this case) had no knowledge of the allegations.  Plaintiffs' primary argument is that the evidence is relevant to the City's culpability.  One of the issues in this case

is whether the City exercised reasonable care to prevent sexually harassing behavior by

Mr. Padilla or whether, in light of the knowledge the City had about Mr. Padilla, the City was

negligent in not knowing about and appropriately responding to the hostile work environment

Mr. Padilla allegedly created at Communications.[4]  Plaintiffs contend that in light of the

knowledge that the City did have regarding Mr. Padilla, it should have exercised greater care to

prevent Mr. Padilla from engaging in sexually harassing behavior, that such greater care should

have included conducting a background check on Mr. Padilla prior to his placement at

Communications, and that evidence of Mr. Padilla's alleged sexual harassment at prior places of

employment is relevant because this conduct would have been revealed through a background

check.  While conducting a background check on Mr. Padilla may have been one way in which

the City could have exercised care to prevent sexual harassment, Plaintiffs cite no authority for

the proposition that a background check was required.[5]  Absent such authority, or evidence that

---

[4]  In the companion cases of *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the United States Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  *Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.  However, when no tangible employment action has been taken against the employee, the employer may raise an affirmative defense protecting it from vicarious liability by showing:  "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.  As an alternative to vicarious liability, a Plaintiff may also establish liability by proving the employer was negligent—in other words, "[t]he employer may be held liable if it knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner."  *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1270 (10th Cir. 1998).

[5]  While Plaintiffs cite *Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001), for the proposition that evidence of Mr. Padilla's alleged sexual harassment at previous places of employment is relevant "to show that a municipality had a custom or policy of tolerating sexual

the City intentionally elected not to conduct a background check because it strongly suspected a

background check would reveal prior misconduct, this Court finds that evidence of Mr. Padilla's

prior misconduct of which the City had no knowledge is of limited probative value.  *See Wilson*

*v. Muckala*, 303 F.3d 1207, 1217 (10th Cir. 2002) (evidence of past sexual harassment properly

excluded because hospital where alleged harasser worked had no notice of the prior incidents

and the evidence thus was not relevant to the hospital's discriminatory intent, nor was it relevant

to establish a hostile work environment at the hospital, as the conduct occurred outside the

hospital).

Finally, this Court finds that any probative value such evidence has—whether under

Plaintiffs' theory that the City should be charged with "constructive knowledge" of prior

misconduct that would have been revealed by a background check or under Plaintiffs' theory that

such evidence demonstrates that Mr. Padilla's misconduct was not gender neutral but was

instead motivated by gender or sexual animus—is substantially outweighed by the danger of

---

harassment or that it was deliberately indifferent in failing to conduct a reasonable background
investigation of an employee in claims under 42 U.S.C. § 1983," *Griffin* is readily
distinguishable for a number of reasons.  First, summary judgment was granted in favor of the
City as to Plaintiffs' § 1983 claims to the extent they are founded on Mr. Padilla's alleged
discrimination (as opposed to the subsequent transfer of Plaintiffs out of Communictions) **[Doc.
No. 199 at 36-39, 41]**. Second, in *Griffin*—which involved a § 1983 claim based on a City's
deliberate indifference in hiring the alleged harasser—there was evidence that the alleged
harasser was hired not only without a background check or investigation but also without a
resume, without an interview, and without any discussion of his qualifications despite the fact
that "at the time when the City was considering hiring [the alleged harasser], it was inundated
with articles, faxes, and mail, warning of [his] problems with sexual harassment and dealings
with women," that concerns were raised at a City Commission meeting and by a City
Commissioner regarding sexual harassment issues, and that high-ranking City officials were
aware that the applicant was a known womanizer and had sexual harassed employees during the
time period between his appointment as acting City Manager and his confirmation as permanent
City Manager.  261 F.3d at 1313-14.  No such evidence exists in this case.

unfair prejudice and the risk of misleading the jury or confusing the issues.  F.R.E. 403.

Accordingly, for the foregoing reasons, this Court will exclude testimony or evidence regarding alleged sexual harassment by Mr. Padilla prior to his employment by the City ***unless*** Plaintiffs can show that the City knew of the alleged wrongdoing prior to the time Mr. Padilla was removed from Communications pending investigation of the EEO complaint brought by Plaintiffs.

In contrast to prior alleged misconduct of which the City had no knowledge, this Court finds that prior alleged misconduct of which the City had actual knowledge is directly relevant to whether the City exercised reasonable care to prevent sexually harassing behavior or was otherwise negligent in failing to know about and rectify the alleged situation at Communications and thus has significantly more probative value.  Accordingly, this Court declines to issue an order that would allow the wholesale exclusion of such evidence and will instead reserve ruling on the admissibility of such evidence pursuant to Rule 403 until trial.  That said, Plaintiffs have not argued that the City had knowledge of the alleged sexual harassment by Mr. Padilla at his prior places of employment before the City commenced its EEO investigation in March of 2007. It therefore appears that much of the evidence regarding alleged sexual harassment by Mr. Padilla prior to his employment by the City could be excluded if Plaintiffs are unable to make the requisite showing that the City had knowledge of the incidents.  Accordingly, this Court will also reserve ruling on any other evidentiary issues such evidence may present.[6]

---

[6] For example, the City argues that some of the evidence Plaintiffs may seek to introduce is hearsay or is objectionable because the witness lacks personal knowledge of the incidents. These objections should be raised, if appropriate, at trial.

**B.      Testimony or Other Evidence Regarding Mr. Padilla's Alleged Improprieties While Employed at the City's 311 Call Center**

While employed at the City's 311 Call Center and prior to the incidents at Communications that gave rise to the instant suit, a complaint was brought against Mr. Padilla by Claudia Ponce Duran alleging *inter alia* that Mr. Padilla, with whom she had been romantically involved, improperly provided her (and another female with whom he had been in a relationship) with interview questions that would be asked during the 311 job interview in order to guide them through the interview process.  The City seeks to exclude this evidence on the basis that it is not relevant, as it does not involve sexual harassment, discrimination or retaliation and as it occurred in a different City department.  Plaintiffs, on the other hand, respond by arguing that the evidence shows that the City was aware by approximately October 2006 that Mr. Padilla had misused his power and position at 311 to manipulate the hiring process to have certain women, whom he was interested in, gain employment with the City under his supervision.  Plaintiffs contend that having the benefit of this information, the City did nothing to protect the employees of 911 from similar abuses of power.

As discussed above, in determining whether the City is liable for the alleged hostile work environment Mr. Padilla created at Communications, relevant issues include whether the City exercised reasonable care to prevent sexually harassing behavior and whether the City was negligent in failing to know about and rectify the alleged situation at Communications.  While this Court acknowledges that the complaint brought against Mr. Padilla for his alleged misconduct at the 311 Call Center was not for sexual harassment and thus may be insufficient, in and of itself, to put the City on notice of Mr. Padilla's alleged propensity for sexual harassment,

11

it is nonetheless a relevant piece of the puzzle, as it shows that the City had knowledge that there were allegations Mr. Padilla had previously misused his power in violation of City policy.  As the City's knowledge and the care it exercised in light of that knowledge are at the heart of Plaintiffs' case, this Court will not exclude such evidence.  This Court will, however, provide an appropriate limiting instruction, as the Court acknowledges that such evidence may not be used as character evidence to establish that Mr. Padilla, in fact, engaged in misconduct at Communications, nor are events at 311 relevant to whether Plaintiffs actually experienced a hostile work environment at Communications.  Accordingly, the City shall submit a proposed limiting instruction prior to the commencement of trial.  Additionally, the Court instructs Plaintiffs that they shall not refer to the allegations relating to Mr. Padilla's alleged misconduct at 311 as sexual harassment.[7]

## C.    The Testimony and Report of Robert Casey

Finally, the City seeks to exclude the testimony and report of private investigator Robert Casey—an investigator the City hired to check into Mr. Padilla's background.  The report

---

[7]  While not discussed in the City's moving papers, in their opposition to the City's motion in limine, Plaintiffs briefly discuss evidence relating to Mr. Padilla's alleged harassment of Communications employee Michelle Lopez, who has brought a separate lawsuit based on Mr. Padilla's alleged harassment of her.  In its reply brief, the City argues that this evidence should also be excluded.  This Court declines to exclude evidence relating to Mr. Padilla's conduct towards Michelle Lopez.  First, this evidence is not part of the original motion in limine and therefore the parties have not had the opportunity to fully brief the matter.  Second, as Michelle Lopez was an employee at Communications, evidence of Mr. Padilla's treatment of her is relevant to whether or not a hostile work environment existed at Communications.  *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415-16 (10th Cir. 1987) (incidents involving employees other than the plaintiff are relevant in establishing a hostile work environment).  Third, there is evidence that Ms. Lopez's concerns about Mr. Padilla were brought to the attention of supervisors and therefore the City had notice of her concerns, even if she did not wish to formally pursue them prior to the time she joined Plaintiffs in filing the March 7, 2007 EEO complaint.

details, among other things, Mr. Casey's conversation with several individuals who formerly worked with Mr. Padilla; some of the individuals stated that Mr. Padilla previously had sexual harassments claims filed against him, that they had witnesses sexual harassment by Mr. Padilla, and that Mr. Padilla had been forced to resign from a prior place of employment as a result of a sexual harassment investigation.  The City objects to the report and Mr. Casey's testimony on the basis that it is hearsay and on the basis that any probative value of the report and Mr. Casey's testimony is outweighed by the danger of unfair prejudice pursuant to Federal Rule of Evidence 403.  The City also objects that Mr. Casey's report and testimony should be excluded under Federal Rule of Evidence 701 as it is not helpful to the jury and improperly usurps the jury's duty to assess the credibility of witnesses and weigh the evidence.

While the precise date Mr. Casey's report was provided to the City is unclear, the evidence suggests that the report was not finalized until late March 2007.  The report, itself, details events and conversations that occurred as late as March 26, 2007 **[Doc. No. 173-3 at 5]**, though Mr. Casey's testimony suggests that the report was delivered to the City on March 23, 2007 **[Doc. No. 201-2, Exhibit E at 8:25-9:12]**.  Either way, it appears that the City was not in possession of the report at the time Plaintiffs filed their EEO complaint on March 7, 2007.

To the extent Plaintiffs would seek to introduce the report to show Mr. Padilla did, in fact, engage in misconduct at prior places of employment, the report is hearsay and Plaintiffs have not established that it falls within a recognized exception to the hearsay rule.  F.R.E. 801-802.  Additionally, evidence of Mr. Padilla's prior misconduct may not be used to show he likely engaged in similar misconduct while employed at Communications.  F.R.E. 404.  On the other hand, to the extent Plaintiffs seek to introduce the report to show that the City was aware of

13

Mr. Padilla's prior misconduct and thus failed to exercise reasonable care to protect the females working at Communications, the report (though not offered for a hearsay purpose) is of limited probative value as the City was not in possession of the report until after Plaintiffs filed their EEO complaint and Mr. Padilla was removed from Communications pending the City's investigation.   Accordingly, for the reasons set forth in Section II(A) of this Order, should Plaintiffs desire to introduce the report in an effort to establish the City's alleged culpability, this Court finds that the report is properly excluded pursuant to Federal Rule of Evidence 403, as the limited probative value of the report is substantially outweighed by the danger that jurors will impermissibly infer that Mr. Padilla created a hostile work environment at Communications based on alleged prior acts of inappropriate behavior at his former places of employment.

While this Court will exclude Mr. Casey's report and will likewise prohibit him from testifying about any interviews he conducted following March 7, 2007, it will not prohibit Mr. Casey from testifying about information that he both obtained and provided to the City prior to March 7, 2007, if any.  As noted above, this Court finds that prior alleged misconduct of Mr. Padilla of which the City had actual knowledge is relevant to whether the City exercised reasonable care to prevent sexually harassing behavior or was otherwise negligent in failing to know about and rectify the alleged situation at Communications and thus the Court will not exclude such evidence pursuant to Federal Rule of Evidence 403.  As it is unclear, however, whether such evidence exists and the precise scope of such evidence, this Court will reserve ruling on further evidentiary objections regarding such evidence until trial.

**III.    Plaintiffs' Motion in Limine to Exclude Evidence that Communications Employees Were Afraid of or Intimidated by Plaintiffs**

Plaintiffs' first motion in limine **[Doc. No. 188, Section A]** seeks to exclude evidence that Communications employees were afraid of or intimidated by Plaintiffs.  As discussed above, the City contends that one of the reasons Plaintiffs were transferred out of Communications is that their continued presence in Communications created fear among some employees and contributed to low employee morale.  While such evidence is relevant to whether the City's proffered reasons for Plaintiffs' transfers were pretextual, the Plaintiffs seek exclusion of the evidence on the basis that none of the employees who were allegedly afraid of or intimidated by Plaintiffs appears on the City's witnesses list, the content of any conversations between disgruntled employees and other witnesses is hearsay, and that the evidence is more prejudicial than probative.

In responding to the Plaintiffs' motion in limine, the City does not indicate that it intends to call witnesses not identified on its witness list for the purposes of proving that Communications employees were afraid of or intimidated by Plaintiffs.  Accordingly, this Court will reserve ruling on the admissibility of such witnesses.  This Court, however, cautions the parties that they should not expect to call witnesses that are not specifically identified on their witness lists other than for true rebuttal purposes.  Instead, in its opposition, the City argues that it intends to have Mr. Padilla and City management (including Pete Dinelli, Bruce Perlman and Holly Steinberg) testify that employees told them that "they feared retaliation and favoritism by Plaintiffs, and that they were troubled by the prospect of Plaintiffs returning to the 911 Center" **[Doc. No. 190 at 2]**.  While evidence of such out-of-court statements is hearsay if used to prove

15

the truth of the matter—namely, that employees did, in fact, fear retaliation and favoritism by Plaintiffs—it is not hearsay if offered to prove the City's state of mind in making its decision to transfer Plaintiffs.  *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434-35 (10th Cir. 1993) (recognizing "[s]tatements offered for the effect on the listener. . . are generally not hearsay"). Moreover, as the City's state of mind in making its decision to transfer Plaintiffs is at the heart of this litigation, this Court finds that the evidence is highly probative and should not be excluded under Federal Rule of Evidence 403.

Recognizing, however, that the testimony of Mr. Padilla and City management as to what employees told them about fear of retaliation and favoritism is admissible only if offered to prove the City's state of mind in making its decision to transfer Plaintiffs, the Court will not allow testimony as to what City management was told ***unless*** Defendant can first establish that the information was relied upon by a City decisionmaker with respect to the decision to transfer Plaintiffs.  Additionally, this Court will provide an appropriate limiting instruction regarding the use of such evidence.  Plaintiffs shall submit a proposed limiting instruction prior to the commencement of trial.

IV.    **Plaintiffs' Motion in Limine to Exclude Reference to the Facts Underlying the** *Regensberg* **Case and Settlement by the City**

In the years preceding the City's efforts to reform Communications, there were several high-profile incidents in which citizens alleged that they were injured as a result of failures at the 911 Call Center.  Some of these incidents, including *Regensberg*, led to lawsuits against the City. Fearing that the jury may believe that Plaintiffs were at fault for such incidents, Plaintiffs' second motion in limine **[Doc. No. 188, Section B]** seeks to preclude the City from offering

details regarding the *Regensberg* case or any other particular violent incident that occurred during the time when Plaintiffs were managing Communications, as well as any information regarding settlement of the *Regensberg* case.  Plaintiffs, however, do not appear to be seeking to preclude all reference to these incidents as they themselves state they "intend to elicit statements generally regarding the City's reference to the *Regensberg* case and other incidents as the reason for their transfer" **[Doc. No. 188 at 3]**.

In response to Plaintiffs' motion in limine, the City states that it "will not offer evidence or argue at trial that Plaintiffs themselves were responsible for these incidents," "will not spend significant time discussing the details of any of these incidents," and "do not intend to discuss the settlement of any lawsuits which ensued" **[Doc. No. 190 at 5-6]**.  The City argues, however, that testimony regarding such high-profile incidents is relevant as these incidents "alerted City management that steps needed to be taken to improve the operations of the 911 Center" **[Doc. No. 190 at 6]**.

This Court finds that the City should be allowed to provide some general background information regarding the *Regensberg* case and other similar incidents, but cautions the City that it should minimize the time spent eliciting testimony on such incidents, as their relevance is limited to explaining why the City perceived a need for reform of Communications. Accordingly, while this Court will allow some general testimony regarding these incidents, it will hold the City to its representations that it will not offer evidence or argue that Plaintiffs were responsible for such incidents, will not spend significant time discussing the details of any such incident, and will not discuss the settlement of any lawsuit that ensued from such incidents. Plaintiffs, of course, will be allowed to elicit testimony that their transfers were not related to any

such incident.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that the City's Motion in Limine to Preclude the Admission of Evidence Regarding Calculable Damages **[Doc. No. 172]** is **DENIED**.

**IT IS FURTHER ORDERED** that the City's Motion in Limine to Exclude Evidence of Other Supposed Allegations Against Michael Padilla **[Doc. No. 173]** is **GRANTED in part and DENIED in part** as follows:

1.  Testimony or evidence regarding alleged sexual harassment by Mr. Padilla prior to his employment by the City shall be excluded *unless* Plaintiffs can show that the City knew of the alleged wrongdoing prior to the time Mr. Padilla was removed from Communications pending investigation of the EEO complaint brought by Plaintiffs.

2.  Testimony regarding Mr. Padilla's alleged misconduct while employed by the City, including at the City's 311 Call Center, shall not be excluded.

3.  The report prepared by Robert Casey shall be excluded and Mr. Casey may not testify about any interviews he conducted in connection with his investigation of Mr. Padilla that occurred after March 7, 2007.  Mr. Casey, however, shall not be prohibited from testifying about information that he both obtained and provided to the City prior to March 7, 2007, if any.

4.  Testimony or evidence regarding the employment discrimination/wrongful termination claim brought against MCI by Santiago Curchitzer shall be excluded.

18

**IT IS FURTHER ORDERED**, with respect to Plaintiffs' Motion in Limine to Exclude Evidence that Communications Employees Were Afraid of or Intimidated by Plaintiffs **[Doc. No. 188, Section A]**, that the Court will not allow testimony as to what City management was told regarding employees' fear of or intimidation by Plaintiffs *unless* Defendant first establishes that the information was relied upon by a City decisionmaker with respect to the decision to transfer Plaintiffs.

**IT IS FURTHER ORDERED**, with respect to Plaintiffs' Motion in Limine to Exclude Reference to the Facts Underlying the *Regensberg* Case and Settlement By the City **[Doc. No. 188, Section B]**, that the City will be allowed to provide some general background information regarding the *Regensberg* case and other similar incidents. The Court, however, cautions the City that it should minimize the time spent eliciting testimony on such incidents. Further, the City shall not offer evidence or argue that Plaintiffs were responsible for such incidents, nor shall it discuss the settlement of any lawsuit that ensued from such incidents.

DATED this 26th day of March, 2010.

_____
**MARTHA VÁZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**

Attorneys for Plaintiffs:
    Robert J. Gorence, Esq.
    Louren M. Oliveros, Esq.
    Marie T. Legrand, Esq.
    Mark Arthur Pustay, Esq.

Attorney for Defendant:
    Patrick D. Allen, Esq.